## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**FLORINE R. MERCER,** *surviving parent of deceased*    :
*HENRY WILSON MERCER,* **and,**    :
**ROSE MARY CHRISTIE,** *as Administrator of the*    :
*Estate of deceased HENRY WILSON MERCER*,    :
   :
      **Plaintiffs,**    :      **CASE NO:**
   **v.**    :      **7:24-cv-95–WLS**
   :
**SHERIFF CODY YOUGHN,**    :
**STANLEY WHITLEY,**    :
**ANTHONY REAVES,**    :
**IRWIN COUNTY SHERIFF'S OFFICE, and**    :
**JOHN DOES 1-3,**    :
   :
      **Defendants.**    :
_____ :

## <u>ORDER</u>

This is a tragic case that arises from a law enforcement officer shooting Henry Wilson Mercer, a sixty-three year-old man, who allegedly had mental health issues. When Mr. Mercer attempted to drive his truck around a police blockade by veering off the road, an officer fired a shot through the front passenger side window of his truck, hitting Mr. Mercer in his right temple, resulting in his death.

Before the Court are Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) and Brief in Support Thereof (Doc. 6) ("Motion to Dismiss") and Defendants' Motion for Hearing (Doc. 8) ("Motion for Hearing"). The Motions have been fully briefed and are ripe for review. Because the pleadings in the Record and the parties' briefs are fully adequate for the Court's review, consideration, and resolution, no hearing is necessary. Therefore, the Motion for Hearing is **DENIED**. The Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.   MOTION FOR HEARING

Defendants move for a hearing in relation to the instant Motion to Dismiss. (Doc. 8 at 1). However, the Court is not required to hold a hearing before resolving a motion

to dismiss. *E.g.*, *Roberts v. FNB S. of Alma*, 716 F. App'x 854, 857 (11th Cir. 2017) (citing *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998)). And the Court does not find that one would be helpful in resolving the issues raised in the instant Motion to Dismiss, as the issues are adequately addressed for the Court's review, consideration and resolution. Accordingly, Defendants' Motion for Hearing (Doc. 8) is **DENIED**.

## II. PROCEDURAL BACKGROUND

Mr. Mercer was the son of Plaintiff Florine R. Mercer and the brother of Plaintiff Rose Mary Christie. Ms. Christie is the administrator of Mr. Mercer's estate. Plaintiffs sued several officers, including three "John Doe" officers, employed by the Irwin County Sheriff's Office ("ICSO") alleging they are responsible for the fatal shooting of Mr. Mercer which occurred on September 23, 2022. The individual officers were all sued in their individual and official capacities.[1] Plaintiffs' Complaint (Doc. 1) was filed on September 20, 2024. On November 19, 2024, Defendants filed the Motion to Dismiss and Motion for Hearing. Plaintiffs' Brief in Opposition to Motion to Dismiss (Doc. 15) was timely filed. Defendants did not file a reply.[2]

While the Motion to Dismiss was pending, the Supreme Court issued a unanimous decision with respect to a court's evaluation of the reasonableness of an officer's use of deadly force. *See Barnes v. Felix*, 605 U.S. ----, 145 S. Ct. 1353 (2025). Because *Barnes* may have significant implications on the parties' arguments as presented and/or on the Court's analysis of the Motion to Dismiss, the parties were allowed to submit supplemental briefs addressing *Barnes*' impact as to: (1) whether a Fourth Amendment violation occurred in this case, and (2) whether Defendants violated clearly established law. (*See* Doc. 17). The parties timely submitted their supplemental briefs. (Docs. 20 & 21). The Motion to Dismiss and Motion for Hearing are fully briefed and therefore, ripe for decision.

---

[1] Plaintiffs also included ICSO as a Defendant in the lawsuit. However, they now agree that ICSO can be dismissed from this action. (*See* Doc. 15 at 8). Thus, Irwin County Sheriff's Office is dismissed with prejudice, as a defendant in this action. (*See supra* Parts V.B.4 & VI).

[2] Defendants also filed a Motion to Stay (Doc. 9) which was denied as moot because a Discovery and Scheduling Order setting formal discovery deadlines has not been entered in this case. (Doc. 16).

III.    FACTUAL ALLEGATIONS IN THE COMPLAINT

The following facts are derived from Plaintiffs' Complaint (Doc. 1). Mr. Mercer was a lifelong resident of Irwin County, Georgia. (Doc. 1 at 2). Plaintiffs contend that Mr. Mercer was known in the community and it was common knowledge that he had suffered a traumatic brain injury from a motorcycle accident at age twenty. The accident cause irreparable damage to Mr. Mercer's prefrontal lobe, resulting in mental health issues including the loss of his impulse control. (*Id.* at 2 & ¶ 17).

Mr. Mercer had outstanding warrants in Ben Hill County, Georgia, for an alleged misdemeanor shoplifting violation at the local Wal-Mart and for second degree felony burglary for allegedly violating a "No Trespass" order issued against Mr. Mercer in July 2021 at the same Wal-Mart where Mr. Mercer was accused of misdemeanor shoplifting. (*Id.* ¶ 16).

On September 23, 2022, Mr. Mercer was driving a 2008 Chevrolet Silverado pick-up truck when he failed to pull over and stop when "blue lighted" by officers on the South-Central Drug Task Force ("Task Force"). (*Id.* ¶ 18). The Task Force requested ICSO's assistance. (*Id.* ¶¶ 15, 19). Defendants Sheriff Cody Youghn ("Sheriff Youghn"), Deputy Sheriff Stanley Whitley ("Deputy Whitley"), Deputy Sheriff Antonio Reaves ("Deputy Reaves"), and John Does 1–3 ("Doe Defendants," and together with Sheriff Youghn and Deputies Whitley and Reaves, the "Individual Defendants") were employed as law enforcement officers at ICSO and were involved in assisting the Task Force. (*Id.* ¶¶ 6, 7, 8, 20). Sheriff Youghn and Deputies Whitley and Reaves set up a roadblock on Ponderosa Road in Irwin County. (*Id.* ¶ 20). As Mr. Mercer approached the roadblock, Deputy Reaves, armed with an AR15 rifle, fired multiple shots attempting to stop Mr. Mercer's truck by shooting out one or more of its tires. (*Id.* ¶¶ 20, 21). Instead of stopping, Mr. Mercer veered his truck onto the shoulder of the road and continued to travel along the shoulder at which time Plaintiffs allege Deputy Whitley came out of a wood line, approached Mr. Mercer's truck with a firearm raised and pointed towards the truck, and that he discharged the firearm directly through the front passenger window striking Mr. Mercer in his right temple resulting in Mr. Mercer's death. (*Id.* ¶ 22).

Plaintiffs allege that ICSO's Use of Force Policy:

a) Prohibits an officer [deputy] from firing at ". . . person(s) who have committed or are committing traffic violations, misdemeanors, and/or nonforcible felonies . . .";

b) States specifically that "[s]hots shall not be fired to halt a person, including fleeing felons, who simply runs away to avoid arrest . . ."; and

c) Prohibits "[s]hots being fired from a moving vehicle or at a moving vehicle, except . . . as authorized by the Sheriff or his designee."

(*Id.* ¶ 24). In addition, according to Plaintiffs, ICSO and Sheriff Youghn have a persistent and widespread practice of failing to properly train and supervise deputies on handling mentally ill suspects, allowing deputies to violate ICSO's policies and procedures and failing to discipline deputies who violate such policies and procedures. (*Id.* ¶ 25).

The introductory portion of Plaintiffs' Complaint asserts claims against the Individual Defendants in their official and individual capacities. Thus, although not specified in each of the following Counts, the Court treats claims against the Individual Defendant as being claims in such Defendant's individual and official capacities. Plaintiffs allege the following six claims:

Count One – § 1983 claim against all the Individual Defendants for Deliberate Indifference to Mr. Mercer's life;

Count Two – § 1983 Claim against Deputy Whitley for Use of Excessive Force causing Mr. Mercer's death in violation of Mr. Mercer's rights under the Fourteenth Amendment;

Count Three – § 1983 Claim against Sheriff Youghn for failure to intervene and prevent Mr. Mercer's death by Deputy Whitley, including supervisory liability;

Count Four – § 1983 Claim against Sheriff Youghn and ICSO for failure to properly train their deputies and failure to enforce ICSO's policies and procedures;

Count Six[3] – Claim under Georgia law against Deputy Whitley for assault and battery against Mr. Mercer; and

Count Seven – Claim for Punitive Damages against all Individual Defendants.

## IV.  STANDARD OF REVIEW

### A.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's

---

[3] The Complaint does not include a claim titled Count Five, but skips to Count Six.

complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Twombly*, 550 U.S. at 556. "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). "But Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1305, 1307 (M.D. Ga. 2018).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings, the Court makes reasonable inferences in plaintiff's favor, but is not required to draw plaintiff's inference. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). The Supreme Court instructs that while considering a motion to dismiss, a court must accept as true all the allegations contained in a complaint. This principle, however, is inapplicable to legal conclusions, which must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

### B. Extrinsic Documents

When considering a motion to dismiss, "the court limits its consideration to the pleadings and exhibits attached thereto." *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Typically, a motion to dismiss must be converted into a motion for summary

judgment when a district court considers matters outside the pleadings. *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing Fed. R. Civ. P. 12(d)). But if the Court converts a motion to dismiss into one for summary judgment it should afford Plaintiff "a reasonable opportunity . . . to present all [relevant] evidence[.]" *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024) (citing Fed. R. Civ. P. 12(d)).  "However, there are two exceptions to this conversion rule: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Id.*

The Defendants request the Court consider three exhibits attached to or provided with the Motion to Dismiss which are identified as: Exhibit A, Deputy Dash Camera Video ("DCV1"), Exhibit B, Deputy Dash Camera Video ("DCV2" and together with DCV1, the "Videos"),[4] and Exhibit C, a copy of Irwin County Sheriff's Office Use of Force Policy (Doc. 6-3) ("ICSO Policy"). As quoted above, the Plaintiffs referenced a portion of the ICSO Policy in their Complaint. They did not reference either Video in their Complaint, nor were copies of any of the exhibits attached to Plaintiffs' Complaint.

Plaintiffs' only argument regarding the exhibits is that "Defendants' introduction of video evidence outside the pleadings by itself kills their Motion to Dismiss. . . . Thus, if Defendants want the Court to consider this additional evidence, they need to withdraw this Motion and give [a]ll parties . . . a reasonable opportunity to present *all* the material that is pertinent to the motion, as required by the Rules." (Doc. 15 (citing Fed. R. Civ. P. 12(d) (emphasis and alterations in original)). Defendants contend that conversion is not required because the incorporation by reference doctrine applies to their exhibits, and therefore, under cited Eleventh Circuit precedent, conversion is not required. (Doc. 6 at 3 n.1). Plaintiffs ignored the binding Eleventh Circuit precedent cited by Defendants' in their Motion to Dismiss. For the reasons and subject to the limitations noted below, the Court will exercise its discretion and consider DCV2 and the ICSO Policy.

1. Videos

The Videos are from the vehicle dash cameras of two deputies, but the specific deputies are not identified. In *Johnson*, the Eleventh Circuit recognized that its decisions have not been

---

[4] Digital copies of the dash cam videos were received by the Clerk's Office and were placed in the Court's digital evidence vault. (*See* docket text entry Nov. 19, 2024).

consistent in applying the incorporation-by-reference doctrine because some Eleventh Circuit cases state that a complaint must refer to the document and/or attach it to the complaint for the incorporation-by-reference doctrine to apply, but other cases have not articulated such a requirement. *Johnson*, 107 F.4th at 1299. In analyzing the issue, the Circuit went back to *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337 (11th Cir. 2005), the first case in which this issue arose in this Circuit. *Johnson*, 107 F.4th at 1300. In clarifying it position, the Eleventh Circuit held that "when resolving a motion to dismiss . . . , a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Id.* Incorporation by reference affords the Court substantial discretion to consider, or not consider, a document. *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024). The Eleventh Circuit has unwaveringly affirmed district courts that consider police body camera footage on motions to dismiss an excessive force lawsuit. *See id.*; *see also Baker v. City of Madison*, 67 F.4th 1268, 1277 (11th Cir. 2023) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); *Johnson*, 107 F.4th at 1300–01; *Swinford v. Santos*, 121 F.4th 179, 187–88 (11th Cir. 2024).

The Court carefully reviewed the Videos multiple times and finds that DCV1 show only an officer travelling down the roadway, stopping, and parking at the location that eventually becomes the roadblock. The DCV1 vehicle was parked in the opposite direction from which Mr. Mercer's truck approached the roadblock, and thus did not capture video of the actual event. Thus, the Court finds DCV1 does not depict events central to Plaintiffs' claims and declines to exercise discretion to consider DCV1.[5]

However, as described below, DCV2 depicts events central to Plaintiffs' claims. The Plaintiffs did not dispute the Videos' authenticity, nor did they present any arguments as to why the Eleventh Circuit cases discussed above do not apply to their case. (*See* Doc. 15 at 18 (asserting only that consideration of the Videos and exhibits results in converting the Motion to Dismiss to a motion for summary judgment)). The Court will exercise its discretion and consider DCV2. In

---

[5] Defendants consistently refer to both videos as supporting their Motion to Dismiss. However, the Court determined that only DCV2 is central to Plaintiffs' Complaint insofar as Defendants' Motion to Dismiss is concerned because DCV1 never shows Mr. Mercer's truck until after Mr. Mercer is shot and his truck is only shown down a bank, stopped in a wooded area. DCV1 shows the officer driving to the roadblock and reflects virtually no other traffic in the area other than individuals who appear to be officers.

doing so, the Court does not find facts from DCV2. Instead, it credits Plaintiffs' allegations as true to the extent those allegations are not plainly contradicted by DCV2. *See Baker*, 67 F.4th at 1277. Where there are ambiguities in the video footage, the Court "must construe all ambiguities" in Plaintiffs' favor. *Jackson*, 97 F.4th at 1350 (quoting *Baker*, 67 F.4th at 1277). But if the "video is clear and obviously contradicts" the Plaintiffs' allegations, the Court accepts the video's depiction over the Complaint's account "and view[s] the facts in the light depicted by the video." *Baker*, 67 F.4th 1277–78 (citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir 2010) and *Scott v. Harris*, 550 U.S. 372, 381 (2007)). But, a video is not obviously contradictory where it fails to convey spoken words or tone or fails to provide an unobstructed view of the events. *See Pourmoghani-Esfahani*, 625 F.3d at 1315 (on review of summary judgment,[6] the Circuit credited plaintiff's version of the record evidence where no obviously contradictory video evidence was available).

A comparison of DCV2 and the allegations in the Complaint reflect that they are, for the most part, closely aligned. Except as noted below, the officer's conversation is mostly inaudible. DCV2 depicts a roadblock at the dead-end intersection of a dirt roadway and a paved highway, approximately five vehicles, one of which is displaying flashing blue lights, are stopped at the "T" intersection of the roads. There are several unidentified individuals at the scene. Presumably these individuals are law enforcement officers. The Court is unable to positively identify any of the individuals except insofar as their movements align with the allegations in the Complaint or as might be consistent with the Defendants' arguments.

Insofar as showing the actual events, the vehicle filming DCV2 arrives at the roadblock at the 14:05 mark on DCV2,[7] stops, and an officer exits the vehicle with a pistol in his hands pointed to the ground. The Court believes this officer is likely Deputy Whitley and for ease of discussion, he will be referred to as Deputy Whitley for purposes of this Order. Deputy Whitley arrives at the scene seconds before events start to unfold. Although he is initially standing near the edge of the paved road between his car and a Dodge Ram 1500 truck, Deputy Whitley appears to reposition himself behind the Dodge Ram—although his face is obscured.

---

[6] The Court notes that in considering a motion to dismiss, it is even more important for courts to credit plaintiff's version of events if a video or other evidence incorporated by reference is ambiguous or does not obviously contradict the complaint.

[7] The first 14:04 minutes of DCV2 depict this officer driving to the roadblock.

When Deputy Whitley arrived, DCV2 shows two other officers standing in the dirt roadway holding rifles pointed down the roadway. Per the Complaint, one of these officers is presumably Deputy Reaves. Before Mr. Mercer's truck comes into view on DCV2, the officers' conversation reflects that they are unsure whether Mr. Mercer is going to stop. (DCV2 at 14:07–14:16).[8] However, apparently realizing that he is not going to stop, the officers in the dirt roadway, aiming low, start shooting down the road. (*Id.* at 14:19). Which is again, consistent with the Plaintiffs' allegations that Deputy Reaves attempted to shoot the truck's tires. As Mr. Mercer's truck comes into view a couple of seconds later, he immediately veers his truck to the left away from the two officers. They continue shooting low for a second while stepping back, and then stop shooting. Mr. Mercer completes his left turn remaining on the shoulder of the intersecting paved road and driving away from the roadblock and officers. (*Id.* at 14:21–14:24). Next, the officer standing on the roadway behind a Dodge Ram 1500 pickup truck (presumably Deputy Whitley), and out of the pathway of Mr. Mercer, fires his pistol at Mr. Mercer's truck seconds after it has passed him. (*Id.* at 14:24–14:25). As noted, this officer's face is blocked from view. Mr. Mercer's truck then travels out of sight of DCV2 and is next shown stopped in a wooded area down a bank off the road.

The Defendants contend the Complaint incorrectly states that Deputy Whitley came out of a wood line and shot Mr. Mercer, and that the Videos will show that Deputy Whitley was in the roadway between sheriff's cars as Mr. Mercer approached him and others at full speed. The officer standing behind the Dodge Ram meets Defendants' description of where Deputy Whitley was and this individual clearly fired his pistol. However, DCV2 does not undoubtedly show a bullet striking Mr. Mercer or his truck. Nor does DCV2 clearly show whether any other officers fired at Mr. Mercer's truck after he veered onto the shoulder of the road. Finally, DCV2 does not show that any officers or other individuals were in the path of Mr. Mercer's truck after he veered onto the shoulder of the road.

---

[8] To the extent audible, one of the officers replying to a question as to whether Mr. Mercer is going to stop, replies "negative." Seconds later, the officer states "he's [Mr. Mercer's] fixin' to – looks like he's going to stop. I hope."

In exercising its discretion to consider DCV2 in resolving this Motion, the Court finds that, with the likely [9] exception that Deputy Whitley was in the roadway behind a Dodge Ram truck, DCV2 does not clearly contradict Plaintiffs' Complaint. Relocating Deputy Whitley, the allegations in the Complaint are summarized as follows:

1. Mr. Mercer had two outstanding warrants from Ben Hill County, Georgia— one for alleged misdemeanor shoplifting at the Wal-Mart store in and the second issued in July 2021, for second degree felony burglary for allegedly violating a "No Trespass" order at the same Wal-Mart where he was accused of misdemeanor shoplifting.

2. On September 23, 2022, Mr. Mercer failed to pull over and stop when he was "blue lighted" by the Task Force.

3. When requested to assist in apprehending Mr. Mercer, the Defendants set up a roadblock.

4. As Mr. Mercer approached the roadblock, Deputy Reaves, fired shots attempting to stop Mr. Mercer's truck by shooting out one or more of its tires.

5. Instead of stopping, Mr. Mercer veered his truck onto the shoulder of the road and continued to travel along the shoulder.

6. Deputy Whitley, standing in the roadway behind a Dodge Ram 1500 truck, discharged his pistol through the front passenger window of Mr. Mercer's truck striking Mr. Mercer in his right temple resulting in Mr. Mercer's death.

   2. ICSO Policy

Under *Johnson*, the Court may properly consider the ICSO Policy in deciding the merits of Defendants' Motion because such policy is (1) clearly central to the Plaintiffs' claims as shown by the discussion of it in their Complaint, including Plaintiffs' quotations of certain terms and provisions in the ICSO Policy (*see* Doc. 1 ¶¶ 23–24), and their reliance on the ICSO Policy in their excessive force claim as well as their claim that Sheriff Youghn failed to properly train deputies and failed to enforce ICSO's policy and procedures; and (2) the Plaintiffs have not challenged the authenticity of the copy of the ICSO Policy attached to Defendants' Motion. *See Johnson*, 107 F.4th at 1300.

---

[9] The Court can speculate that the officer standing behind the Dodge Ram is Deputy Whitley per Defendants' narration of events.

## V.   MOTION TO DISMISS

Defendants raise several bases on which they contend Plaintiffs' complaint, or portions thereof, should dismissed. The Court addresses Defendants' arguments in the following order: (A) Plaintiffs' Complaint is a shotgun pleading; (B) Plaintiffs' § 1983 claims in Counts One through Four fail to state a claim against Defendants in their individual capacities and Defendants are entitled to qualified immunity as to such claims; (C) Claims against Defendants in their official capacities are barred by the Eleventh Amendment; and (D) Plaintiffs' state law claims against Deputy Whitley in his individual capacity are barred by official immunity; and (E) fictitious-party pleading is not permitted in federal court.

Pursuant to long-standing Supreme Court precedent and existing law in this Circuit, a plaintiff must allege sufficient facts in his complaint in support of his claims in order to avoid dismissal under Rule 12(b)(6) and cannot avoid the fate of dismissal by merely asserting that discovery is necessary to meet this pleading requirement. Where a defendant asserts qualified immunity at the motion to dismiss stage, Plaintiff must allege facts sufficient to overcome qualified immunity. The Court addresses Defendants' Motion to Dismiss with these requirements in mind.

### A.  Shotgun Pleading

As an initial matter, Defendants assert that the Complaint is an improper shotgun pleading. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). The Eleventh Circuit has identified four "rough types or categories of shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Offc.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Those are a complaint: (1) "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint[,]" (2) "replete with conclusory,

vague, and immaterial facts not obviously connected to any particular cause of action[,] (3) fails to "separate[e] into a different count each cause of action or claim for relief[,] and (4) "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321-23. The issue for the Court is whether the complaint provides a defendant with "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (citation and internal quotation marks omitted).

Here, the Complaint shares some characteristics of a shotgun pleading. Specifically, in the portion of the Complaint which sets out the Plaintiffs' claims, all preceding paragraphs are incorporated into each successive claim. However, the relevant statute or cause of action is presented in bold type as a title to the claim and the Defendant(s) against whom each claim is asserted is easily identified. While some claims could/should have been stated more clearly, that is the purpose of the Defendants' current Motion as to particular claims. "[I]t is not dispositive of the separate question of whether the claims in this complaint are so poorly pleaded that they warrant a dismissal under Rules 8(a)(2) and 10(b) regardless of whether they state viable claims." *Weiland*, 792 F.3d at 1325. After careful review of the Complaint, the Court finds that the six claims stated "are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Id.* at 1326.

Accordingly, Defendants' Motion to Dismiss the Complaint as a shotgun pleading is **DENIED**.

### B. Plaintiffs' Individual Capacity § 1983 Claims[10]

Plaintiffs assert four § 1983 claims: (1) deliberate indifference to Mr. Mercer's life against all Defendants, (2) use of excessive force by Deputy Whitley in violation of Mr. Mercer's Fourteenth Amendment rights, (3) failure to intervene against Sheriff Youghn, and (4) failure to properly train and failure to enforce ICSO's policies and procedures against Sheriff Youghn.

---

[10] In their Complaint's caption, introductory paragraph, and paragraphs identifying Defendants, Plaintiffs indicate they are suing Defendants in their individual and official capacities. Claims against Defendants in their official capacities are addressed in Part V.C. below.

Title 42 U.S.C. § 1983 creates a cause of action which allows an individual whose federal constitutional or statutory rights have been violated to seek damages from the state actor who caused the violation.[11] A plaintiff asserting a § 1983 claim must show that the conduct complained of (1) was committed by a person acting under color of state law, and (2) that conduct deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156–57 (1978)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–257 (1978)).

Defendants contend they are entitled to qualified immunity with respect to Plaintiffs' § 1983 claims against them, in their individual capacities.

> Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. For qualified immunity to apply, a government official must first establish that he was acting within his discretionary authority when the alleged wrongful acts occurred. Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate. First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right. Second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct. "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.

*Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (citations and internal quotation marks omitted). Once the burden shifts to plaintiff, then to overcome qualified immunity at the motion to dismiss stage, "a plaintiff must 'plead[ ] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established' at the time of the challenged conduct." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (alteration in

---

[11] 42 U.S.C. § 1983, in pertinent part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). This Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft,* 563 U.S. at 743 (2011).

Plaintiffs do not contest that Defendants had discretionary authority for their actions. Therefore, the Court moves on to address whether Plaintiffs pled sufficient facts showing that Defendants violated Mr. Mercer's Constitutional rights alleged in Counts One through Four and whether Plaintiffs pled sufficient facts showing Defendants violated clearly establish law with respect to such Constitutional violations, if any.

1.  Count One—Claim Against All Defendants for  Deliberate Indifference

Count One is titled as a § 1983 claim for "Deliberate Indifference for the Life of Henry Wilson Mercer" and is brought against each Defendant. Plaintiffs allege that Defendants violated the ICSO Policy by intentionally using, or causing to be used, deadly force against Mr. Mercer while they were attempting to apprehend him. (Doc. 1 ¶ 30). They further allege that Defendants were acting under color of law and were aware of Mr. Mercer's mental illness that made him susceptible to attempting to flee when pursued by one or more of the Defendants. (*Id.* ¶¶ 29, 31). Plaintiffs appear to be arguing that a suspect's mental condition, alone, prevents law enforcement from using deadly force to apprehend that suspect regardless of the suspect's actions. However, Plaintiffs do not cite to any cases or authority supporting their position.

As Defendants point out, Plaintiffs did not identify the specific constitutional provision or federal law they allege the Defendants violated in Count One, but assume Plaintiffs seek to assert an excessive force claim in violation of Mr. Mercer's Fourth Amendment right. However, in response, Plaintiffs point to the title of Count One asserting a claim for deliberate indifference to Mr. Mercer's life. Plaintiffs further contend "[i]t is as well established as anything can be in 1983 litigation the 'deliberate indifference' to the Constitutional rights of an injured plaintiff by a state actor states a claim under federal civil rights law." (Doc. 15 at 12). As support, Plaintiffs cite two cases relating to claims brought by prison inmates against prison officials alleging deliberate indifference to substantial risk of harm to the prison inmate who were injured by other inmates while incarcerated in violation of the Eighth Amendment.

*See Farmer v. Brennan*, 511 U.S. 825 (1994); *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019). Mr. Mercer was not a prison inmate at the time he was killed by Deputy Whitley, and thus, the Eighth Amendment is not applicable to him. Plaintiffs also point to their allegation that "Defendants . . . violated Irwin County Sheriff's Office Policies by intentionally using, or causing to be used, deadly force against Henry Wilson Mercer while in the act of apprehending him for an outstanding misdemeanor and non-forcible felony warrants and such actions constitute deliberate indifference to the life of Henry Wilson Mercer." (Doc. 1 ¶ 30).

From Plaintiffs' response, it is unclear what Constitutional right was violated. "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the *Constitution and laws.*'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (emphasis added) (quoting § 1983). In Count One, even with Defendants attempting to assist them by assuming Plaintiffs intended to state an excessive force claim under the Fourth Amendment, Plaintiffs insist they are asserting a claim for deliberate indifference as a violation of the ICSO Policy. Plaintiffs did not provide any argument or authority supporting a claim for deliberate indifference outside the prison inmate context, which is clearly not applicable here. The Court cannot, and will not, rewrite an otherwise deficient pleading or perform the Plaintiffs' research in order to sustain an action. *See Gibbs v. United States*, 865 F. Supp. 2d 1127, 1151 (M.D. Fla. 2012) (*quoting GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Without an identified established Constitutional right, the Court cannot perform an analysis. Plaintiffs have pointed to no case by the United States Supreme Court or the United States Court of Appeals for the Eleventh Circuit where facts as alleged constitute a violation of an identified Constitutional right pointed to by Plaintiffs. This is fatal to Plaintiffs' claim. Plaintiffs deny they assert a violation of the Fourth Amendment in Count One and identified no case with similar facts or circumstances that violate a Constitutional right or law of the United States asserted by Plaintiffs as to Count One.

Based on the foregoing, the Court finds that Count One of Plaintiffs' Complaint fails to state a claim alleging a constitutional violation under § 1983. Accordingly, Defendants' Motion to Dismiss Count One is **GRANTED**.

2.  Count Two—Claim Against Deputy Whitley for Use of Excessive Force

Plaintiffs allege Mr. Mercer had a clearly established constitutional right to be free from the use of excessive and deadly force. (Doc. 1 ¶ 34). They further allege that Deputy Whitley, acting under color of law, violated Mr. Mercer's Fourteenth Amendment right by using excessive and deadly force when Deputy Whitley discharged his firearm, shooting Mr. Mercer in the right temple while he was unarmed and fleeing a roadblock. (Doc. 1 ¶¶ 35–37). Defendants argue that Count Two should be dismissed because it contains conclusory statements and insufficient facts. (Doc. 6 at 11). Defendant further contend that DCV2[12] supports their account of events that Deputy Whitley did not violate Mr. Mercer's constitutional rights when he used deadly force because under the totality of the circumstances, Deputy Whitley had probable cause to believe that Mr. Mercer posed a threat of serious physical harm to himself and others, and that Deputy Whitley is entitled to qualified immunity. Plaintiffs are correct that Defendants are not entitled to have their Motion to Dismiss decided on the basis of their version of the facts. (Doc. 15 at 14). As discussed below, while the Court accepted that DCV2 likely shows that Deputy Whitley was in the paved roadway when he fired his pistol at Mr. Mercer or his truck, the Court does not accept Defendants' further narration of the events.

a.  *Whether Deputy Whitley violated Mr. Mercer's Constitutional right*

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386 (1989). Plaintiffs brought their excessive force claim under the Fourteenth Amendment. Excessive force claims may be brought under the Fourth, Eighth, and Fourteenth Amendments; all of which provide protection from excessive force, but the status of the victim determines which Amendment applies to the facts in a particular case. Specifically, "the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers 'those who exist in the in-between—pretrial detainees.'" *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) (quoting *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019)). A pretrial detainee is an individual "lawfully

---

[12] Although Defendants consistently refer to the "videos," the Court determined that only DCV2 is central to Plaintiffs' Complaint and thus, refers only to DCV2 in its analysis.

committed to pretrial detention" who has received "a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Mr. Mercer had not been arrested when Deputy Whitley shot him.

In *Graham*, the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 394. "A 'seizure' for Fourth Amendment purposes occurs when 'there is a governmental termination of freedom of movement through means intentionally applied.'" *Willis v. Mock*, 600 F. App'x 679, 683–84 (11th Cir. 2015) (per curiam) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)); *see also Tennessee v. Garner*, 471 U.S. 1 (finding police officer's fatal shooting of a fleeing suspect constituted a Fourth Amendment "seizure"). Thus, whether Plaintiffs have stated sufficient facts to state a claim for excessive force against Deputy Whitley is correctly analyzed under the Fourth Amendment.[13]

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Durruthy v. Pastor*, 351 F.3d 1080, 1093 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). To prevail on a Fourth Amendment excessive-force claim, the Plaintiff must show both that a seizure occurred and that the force used to accomplish the seizure was unreasonable. *Willis*, 600 F. App'x at 683. As with most Fourth Amendment inquiries, the inquiry turns on reasonableness. *Graham*, 490 U.S. at 395–96. The Court must ask "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Edwards v. Shanley*, 666 F.3d 1289, 1295 (11th Cir. 2012). Courts generally refer to three factors, known as the *Graham* factors, to determine whether a use of force is reasonable: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or

---

[13] The Court notes that a similar analysis would apply if Plaintiffs' claim arose under the Fourteenth Amendment. *See Crocker*, 995 F.3d at 1254 (quoting *Piazza*, 923 F.3d at 953) ("We have already observed that 'the Fourteenth Amendment standard [for pretrial detainees] has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment.'").

attempting to evade arrest by flight." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (quoting *Graham*, 490 U.S. at 396). The "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 394). With respect to assessing whether an officer acted reasonably in using force, the Supreme Court has instructed that "a court *must* consider all the relevant circumstances, including facts and events leading up to the climactic moment." *Barnes v. Felix*, 605 U.S. ___, 145 S. Ct. 1353, 1356 (2025) (emphasis added). The analysis now required by *Barnes* "precludes 'putting on chronological blinders.'" *Heid v. Rutkoski*, 143 F.4th 1255, 1262 (11th Cir. 2025) (alterations adopted) (quoting *Barnes*, 145 S. Ct. at 1359). "'The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force.'" *Id.* (quoting *Barnes*, 145 S. Ct. at 1358).

The Eleventh Circuit has consistently upheld an officer's use of deadly force in cases where the officer reasonably believed his life or the life of others was endangered by a suspect who used or threatened to use his car as a weapon. *Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1298 (11th Cir. 2021) (finding officer reasonably perceived his life was in danger when suspect shifted vehicle into reverse and started backing up toward officer) (citing cases); *see also Pace v. Capobianco*, 283 F.3d 1275, 1277–78, 1281–82 (11th Cir. 2002) (holding officers reasonably used deadly force to stop a suspect whom they had cornered after a high-speed chase and who refused to get out of his car, kept the engine running, and started driving forward); *Robinson v. Arrugueta*, 415 F.3d 1252, 1254, 1256 (11th Cir. 2005) (holding that an officer reasonably used deadly force when a suspect started driving toward him at one to two miles per hour, threatening to crush him against another car in a matter of seconds); *McCullough v. Antolini*, 559 F.3d 1201, 1208 (11th Cir. 2009) (holding that sheriff's deputies reasonably used deadly force against a suspect who, after a high-speed chase, repeatedly refused to show his hands or respond to officers, revved his engine, and then drove his truck toward a deputy standing nearby in a parking lot); *Singletary v. Vargas*, 804 F.3d 1174, 1176, 1178, 1182–84 (11th Cir. 2015) (holding sheriff's deputy reasonably used deadly force when he was near the front of a suspect's car and it accelerated towards him).

While the above cases were all decided at the summary judgment stage, what is clear from the cases is that the suspect was moving the vehicle—either driving forward or in

reverse—toward the officer or extremely close to the officer or another person, giving credence to the shooting officer's belief that their life and/or the lives of others, was in danger, thereby making the use of deadly force reasonable. Here, Defendants assert DCV2 shows that Deputy Whitley had probable cause to believe that Mr. Mercer posed a threat of serious physical harm to Deputy Whitley or others by driving wildly and erratically through the officers' roadblock. (Doc. 21 at 4).

In its assessment of the *Graham* factors, the Court notes that (1) Plaintiffs allege Mr. Mercer was unarmed, but concede he had outstanding warrants for a misdemeanor shoplifting violation and a "non-forcible" felony for allegedly violating a "No Trespass" order issued in July 2021; (2) Plaintiffs concede, as they must, that Mr. Mercer was fleeing in an attempt to evade arrest; and (3) Plaintiffs' allege there is no evidence that Defendants were in danger from Mr. Mercer—that Deputy Whitley's use of deadly force was unreasonable and unjustified. The Court finds that the events shown by DCV2 are not as crystal clear as Defendants' narration espouses. The change in Deputy Whitley's location nor anything else shown on DCV2 clearly establish that Deputy Whitley had probable cause to believe that Mr. Mercer posed a significant threat of death or serious injury to Deputy Whitley or to others. Rather, DCV2 shows that the officers standing in the dirt roadway—who were in the path of Mr. Mercer's truck—chose to shoot at the truck's tires instead of using deadly force directed at and shooting Mr. Mercer through the front windshield. Those officers were shooting at the vehicle's tires to stop it. The reasonable inference from their actions is that they did not fear for their lives or the lives of others, making it unclear why Deputy Whitley, standing behind a Dodge Ram 1500 truck, mostly obscured from sight, and out of the path of Mr. Mercer's truck came to a different conclusion. *See Jackson*, 97 F.4th at 1350 (stating all ambiguities in video footage must be construe in Plaintiffs' favor). The Court agrees that Mr. Mercer was driving "at speed" on the dirt roadway. However, contrary to Defendants' assertions, DCV2 shows that Mr. Mercer had control of his truck and he immediately veered away from officers. Certainly, the testimony of officers who were at the scene may fill in gaps in DCV2 and result in a different conclusion. However, such testimony is not permitted at the motion to dismiss stage, and the Court declines to accept Defendants' unsworn, self-serving narration of the events depicted in DCV2.

Accordingly, the Court finds that the Plaintiffs pled sufficient facts to adequately support their allegations that Deputy Whitley violated Mr. Mercer's constitutional right by using excessive force when he fired the shot into Mr. Mercer's truck.

> b. *The law was clearly established at the time Deputy Whitley violated Mr. Mercer's Constitutional right*

Further, the Court finds that Plaintiffs pled sufficient facts to support their allegation that the law was clearly established at the time of these events. In *Tennessee v. Garner*, the Supreme Court concluded that deadly force "may not be used unless it is necessary to prevent the escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. 1, 3 (1985) (emphasis added). Where a suspect poses no immediate threat to officers or others, "the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* at 12. *Morton v. Kirkwood*, 707 F.3d 1276, 1283 (11th Cir. 2013) (stating that "where the plaintiff did not use or did not threaten to use his car as a weapon, we have rejected an officer's use of deadly force"). *Garner* "clearly establish[es] the law, even in a car chase scenario, where the suspect 'did not use or did not threaten to use his car as a weapon.'" *Gaillard v. Commins*, 562 F. App'x 870, 876–77 (11th Cir. 2014) (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1283 (11th Cir. 2013)). In *Vaughan v. Cox*, the Eleventh Circuit "conclude[d] that a reasonable jury could find, under [plaintiff's] version of the facts, that [the officer's] use of deadly force to apprehend [plaintiff] was unconstitutional," because "[g]enuine issues of material fact remain[ed] as to whether [plaintiff's flight in the truck] presented an immediate threat of serious harm to [the officer] or others at the time [the officer] fired the shot that struck [plaintiff]." 343 F.3d 1323, 1330 (11th Cir. 2003). Here we are only at the motion to dismiss stage and the Court found that Plaintiffs pled sufficient facts to adequately support their underlying claim that Deputy Whitley violated Mr. Mercer's constitutional right when he fired the shot into Mr. Mercer's truck. DCV2 does not conclusively contradict Plaintiffs' allegations. The question of whether Defendants can present evidence establishing that Mr. Mercer did present an immediate threat of serious harm to the officers or others, has yet to be determined.

Based on the foregoing, the Court finds that Plaintiffs pled sufficient facts to adequately support their allegations that Deputy Whitley violated Mr. Mercer's constitutional right to be free from the use of excessive and deadly force. Further, absent evidence that Deputy Whitley

had probable cause to believe that Mr. Mercer posed a significant threat of death or serious injury to Deputy Whitley or to others, such right was clearly established at the time Deputy Whitley shot Mr. Mercer. Deputy Whitley is not entitled to qualified immunity on Defendants' Motion.

Accordingly, Defendants' Motion to Dismiss Count Two is **DENIED**.

### 3. Count Three—Claim Against Sheriff Youghn for Failure to Intervene and Supervisory Liability

Plaintiffs appear to allege two causes of action in Count Three. First, they allege that Sheriff Youghn was present at the roadblock and that he had supervisory and command authority over Deputy Whitley, that Sheriff Youghn was in a position to take reasonable steps to protect Mr. Mercer, but he failed to exercise his authority to stop Deputy Whitley from firing his pistol at Mr. Mercer's truck. Plaintiffs also allege that as Deputy Whitley's supervisor, Sheriff Youghn knew the risk posed by Deputy Whitley to Mr. Mercer, but that he disregarded that risk. Plaintiffs' contend such conduct far exceeds gross negligence, for which Sheriff Youghn is liable.

Defendants, apparently presuming that the Court will dismiss Plaintiffs' claim for excessive force against Deputy Whitley in Count Two, argue that Plaintiffs' failure to intervene claim fails because Deputy Whitley's use of deadly force was not a constitutional violation and that Sheriff Youghn is entitled to qualified immunity. Defendants also argue that Plaintiffs fail to allege any facts to support the conclusory allegations in Count Three, and that Plaintiffs cite no Constitutional or statutory provision violated by Sheriff Youghn.

#### a. Failure to Intervene

Plaintiffs do not allege that Sheriff Youghn ordered or otherwise actively participated in Deputy Whitley's alleged use of excessive force. If a law enforcement officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as use of excessive force takes place in his presence, that officer is directly liable under § 1983. *See Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) (instructing district court on remand to determine whether one officer was in a position to intervene if court determined second officer violated plaintiff's constitutional rights by use of excessive force); *see also Baker v. City of Madison*, 67 F.4th 1268, 1281 (11th Cir. 2023) (stating "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive

force can be held liable for his nonfeasance.") (alterations adopted) (citation and internal quotation marks omitted).

Contrary to Defendants' assertion, Plaintiffs' underlying claim against Deputy Whitley for excessive force survives Defendants' Motion to Dismiss. However, Plaintiffs must also have alleged sufficient facts showing that Sheriff Youghn was present at the scene and that he had the ability and opportunity to intervene to prevent Deputy Whitley's use of force. Defendants allege that Plaintiffs failed to allege any facts, but only provide conclusory allegations. As the Parties are aware, in resolving a motion to dismiss, a court must accept as true all the allegations contained in a complaint. This principle, however, is inapplicable to legal conclusions, which must be supported by factual allegations. *Ashcroft*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint). The Plaintiffs have accurately stated the standard in their brief that,

> A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a *formulaic recitation of the elements of a cause of action will not do*." Twombly, 550 U.S. at 555.

(Doc. 15 at 2 (emphasis added)). Plaintiffs' allegations supporting their claim that Sheriff Youghn failed to intervene are in fact only a recitation of the elements necessary to prove their claim; *i.e.*, that Sheriff Youghn was present at the roadblock, that he was in a position to take reasonable steps to protect Mr. Mercer, that he failed to take steps to stop Deputy Whitley. Plaintiffs essentially argue that "the fact [is] that 'conclusory statements,' whatever that means, are more or less the essence of notice pleading." (Doc. 15 at 12). Not surprisingly, Plaintiffs do not cite any case law in support of their argument. Plaintiffs argue that:

> Exactly how Sheriff Youghn failed to intervene, as in what he saw and when he saw it, what he said and who he said it to (or not), etc., are exactly the kinds of things that need to be fleshed out in discovery. Only the Defendants are in possession of such knowledge at this point, and it would be manifest injustice to allow them to hide it behind a motion to dismiss.

(Doc. 15 at 16). Again, not surprisingly, Plaintiffs do not cite any case law that supports their argument. Plaintiffs' claim appears to be based solely on speculation which is insufficient.

Accordingly, the Court finds that the Plaintiffs failed to plead sufficient *facts* to adequately support their allegation that Sheriff Youghn violated Mr. Mercer's constitutional

right when he allegedly failed to intervene to prevent Deputy Whitley from firing his pistol into Mr. Mercer's truck hitting Mr. Mercer in the right temple and causing his death. No supporting factual allegations are stated to support Plaintiffs' conclusions.

       *b.  Supervisory Liability*

Plaintiffs also assert § 1983 claims against Sheriff Youghn in his supervisory capacity. Sheriff Youghn contends that Plaintiffs failed to state a claim against him to support such claim.

> It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. . . .
>
> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when . . . facts support an inference that the supervisor . . . knew that the subordinates would act unlawfully and failed to stop them from doing so. . . . Ultimately, though, the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.

*Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (alterations adopted) (citations and internal quotations marks omitted). Plaintiffs allege that as Deputy Whitley's supervisor, Sheriff Youghn knew the risk posed by Deputy Whitley to Mr. Mercer, but that he disregarded that risk. Plaintiffs do not allege that Sheriff Youghn participated by ordering Deputy Whitley to shoot Mr. Mercer. Nor do they allege that Deputy Whitley or other officers with the ICSO had a history of using excessive force such that Sheriff Youghn was on notice that Deputy Whitley would act unlawfully.

The Court finds that the Plaintiffs failed to plead sufficient *facts* to adequately support a claim for Supervisory Liability against Sheriff Youghn.

Based on the foregoing, the Court finds that Count Three of Plaintiffs' Complaint fails to state a claim. Accordingly, Defendants' Motion to Dismiss Count Three is **GRANTED**.

4.  <u>Count Four—Claim Against Sheriff Youghn for Failure to Train and Failure to Enforce ICSO Policies</u>

a.  *Count Four as to ICSO and Sheriff Youghn in his Individual Capacity*

Count Four was originally brought against ICSO and Sheriff Youghn. In their response, Plaintiffs state: "Defendants having admitted that Defendant Cody Youghn, individually and in his capacity as Sheriff of Irwin County, Georgia, is properly named as a Defendant herein, Plaintiffs agree that the 'Irwin County Sheriff's Office' is no longer needed as a Defendant and may be dismissed." (Doc. 15 at 8).

Plaintiffs generally state that their claims are asserted against Defendants in their individual and official capacities but do not further indicate in the separate Counts whether such claims are brought against the Defendant(s) named therein in their individual and/or official capacity. To the extent Plaintiffs intend to bring *Monell* claims against Sheriff Youghn in his individual capacity, such claims fail. "Under *Monell*, a *municipality* may be liable under § 1983 for constitutional violations committed by its employees pursuant to a municipal policy or custom. *Wilcox v. Andalusia City Sch. Bd. of Educ.*, 660 F. Supp. 3d 1167, 1183 (M.D. Ala. 2023) (citing *Monell*, 436 U.S. at 693–95) *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating "*Monell*, the Supreme Court has explained, is a case about responsibility, and is meant to limit § 1983 liability to acts which the municipality has officially sanctioned or ordered.") (internal quotation marks omitted)); *Gatchel v. Henry Cnty.*, No. 1:22-CV-03284, 2023 WL 6216529, at *4 (N.D. Ga. June 20, 2023), *report and recommendation adopted*, No. 1:22-CV-03284, 2023 WL 12090228 (N.D. Ga. Oct. 12, 2023) (finding where defendants have been sued only in their individual capacities, *Monell* is not a proper vehicle for establishing § 1983 liability against them); *Wilcox v. Andalusia City Sch. Bd. of Educ.*, No. 2:19-CV-650, 2023 WL 2412775, at *7 (M.D. Ala. Mar. 8, 2023) (granting summary judgment to defendants sued under *Monell* in their individual capacities).

Accordingly, with respect to all claims against Defendant Irwin County Sheriff's Office and with respect to Plaintiffs' § 1983 claims in Count Four against Sheriff Youghn, in his individual capacity, the Motion to Dismiss is **GRANTED**.

b.  *Count Four as to Sheriff Youghn in his Official Capacity*

A municipality may be held liable under § 1983 where its "official policy" causes a constitutional violation or where the failure to adequately train law-enforcement officers is

24

likely to result in a constitutional violation. *Newbern v. Clinch Cnty.*, No. 7:15-CV-229, 2016 WL 2930960, at *3 (M.D. Ga. May 19, 2016).

         *i.*   *Policy, custom, or practice*

    "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A plaintiff seeking to hold a municipality liable under § 1983 must identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Id.* at 1290. The Eleventh Circuit "defined custom as a practice that is so settled and permanent that it takes on the force of the law. In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id.* (internal quotation marks and citations omitted). Plaintiffs can establish ICSO's policy by identifying either (1) an official policy, or (2) an unofficial custom or practice of ICSO shown through the repeated acts of a final policymaker, which Plaintiffs allege is Sheriff Youghn. *See Newbern*, 2016 WL 2930960, at *2.

    Plaintiffs quote portions of ICSO's Policy regarding the circumstances in which the Policy holds that the use of deadly force is not justified. (Doc. 1 ¶ 24). Plaintiffs selectively neglected to include in their quote, the exceptions to such situations. The Court restates in full the relevant portions of ICSO's Policy.[14]

> The use of deadly force is not justified under the following circumstances:
>
> . . . .
>
> 2. Shots shall not be fired at person(s) who have committed or are committing traffic violation, misdemeanors, non-forcible felonies, and forcible felonies not in progress except as defined in A.1 or A.3 [below].
>
> . . . .
>
> 4. Shots shall not be fired to halt and [sic] person, including fleeing felons, who simply runs away to avoid arrest except as defined in A.3.
>
> 5. Shots shall not be fired from a moving vehicle or at a moving vehicle, except as defined in A.1, A.2, or A.3 or as authorized by the Sheriff or his designee.

(ICSO Policy § 3.B., ECF No. 6-3).

---

[14] As discussed above, the Court determined it was appropriate to exercise its discretion to include ICSO's Policy in its review of the Motion to Dismiss under the incorporation-by-reference doctrine.

The exceptions identified as A.1, A.2 or A.3 above are:

A. The use of deadly force by an officer during his/her performance of duty is restricted to the following:

l. When the officer reasonably believes it necessary to defend his/her own life or the life of another, to prevent great bodily injury to himself/herself or another. (*See* O.C.G.A. § 16-3-21(a))

2. When necessary to prevent the commission of forcible felonies as defined above in section 1.E.[15] (*See* § O.C.G.A. 16-3-21(a))

3. To apprehend a suspected felon only when the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

(a) When the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others.

(b) When there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. (*See* § O.C.G.A. 17-4-20(8))

(ICSO Policy § 3.A). Plaintiffs allege that ICSO and Sheriff Youghn have a persistent and widespread practice of allowing deputies to violate ICSO's own policies and procedures, failing to enforce policies, and failing to properly discipline deputies when they violate ICSO's policies. (Doc. 1 ¶ 25). In Count Four, Plaintiffs assert Mr. Mercer's death was the direct result of the policies, procedures, and customs of ICSO. Plaintiffs allege Sheriff Youghn is ICSO's final policymaker responsible for the supervision, administration, policies, practices, customs, and operations of the ICSO. Plaintiffs appear to allege that Sheriff Youghn and ICSO had a policy, custom, and practice of allowing the unauthorized use of deadly force, which created a culture within ICSO wherein violating citizen's constitutional rights was tolerated. Plaintiffs allege that such policies, customs, and practices directly caused and were the "moving force" behind Mr. Mercer's death.

Plaintiffs have not specifically identified any official policy or well-settled custom or practice permitting a constitutional violation attributable to Sheriff Youghn which was the moving force behind Deputy Whitley's allegedly unconstitutional act. Plaintiffs' assertions that Sheriff Youghn disregarded policies and/or procedures, failed to enforce procedures or failed

---

[15] ICSO Policy § 1.E. states: "E. Forcible Felony - Forcible felony means any felony which involves the use or threat of physical force or violence against any person(s)."

to discipline deputies who violated procedures are conclusory and carry no weight. Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555. And a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* at 557; *see also Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Plaintiffs have done nothing more than make vague and conclusory allegations against Sheriff Youghn, and that is not sufficient to state a claim for municipal liability under § 1983. Plaintiffs' recitation of written policy and the allegations the policy was violated on one occasion does not establish a policy or custom.

## ii. Inadequate training

In *City of Canton v. Harris*, the Supreme Court held "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388 (1989).

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.

*Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[E]vidence of previous incidents is not required to establish city policy if the need to train and supervise in a particular area is 'so obvious' that liability attaches for a single incident." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015). Deliberate indifference is an exacting standard, requiring proof that a supervisor "disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. This requires plaintiffs to demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program causes employees to violate citizen's constitutional rights, and regardless of this knowledge, the supervisor choses not to amend the training program. *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1052 (11th Cir. 2014).

Plaintiffs allege Sheriff Youghn failed to provide adequate and appropriate training, supervision, and education regarding the handling and treatment of mental health suspects such as Mr. Mercer. Plaintiffs did not allege that Sheriff Youghn had actual or constructive notice of any alleged constitutional violations because of an alleged deficiency in his training

program. There is no allegation that ICSO deputies have a history of using deadly force against mental health suspects that could have provided Sheriff Youghn with constructive notice of a problem. Plaintiffs may also show actual or constructive notice without prior incidents, if the likelihood of a constitutional violation is so high that the need for training is obvious. *Chisesi v. Hunady*, No. 21-11700, 2024 WL 1638587, at *6 (11th Cir. Apr. 16, 2024), *cert. denied*, 145 S. Ct. 773 (2024), *and cert. denied*, 145 S. Ct. 1058 (2025). However, "using a single incident as the basis for liability—is available in only a 'narrow range of circumstances." *Id.* As noted by Defendants, Plaintiffs failed to allege the need for such training is so obvious that liability attaches to the single incident in this case.

Plaintiffs' conclusory allegations that Sheriff Youghn inadequately trained deputies regarding the handling and treatment of mental health suspects fall far short of those needed to state a § 1983 claim against Sheriff Youghn in his official capacity. Conclusory allegations on their own do not state a claim for relief.

Accordingly, the Motion to Dismiss is **GRANTED** with respect to Plaintiffs' § 1983 claims in Count Four against Sheriff Youghn, in his official capacity.

### C. Plaintiffs' § 1983 Claims Against Defendants in their Official Capacities are Barred by the Eleventh Amendment

Plaintiffs generally state that their claims are asserted against Defendants in their individual and official capacities. They identify the Defendant(s) against whom each claim is alleged, but they do not further indicate whether such claims are alleged in such Defendant(s) individual and/or official capacity. Thus, Defendants move to dismiss all Plaintiffs' § 1983 claims which are or may be alleged against them in their official capacity on the basis that such claims are barred by Eleventh Amendment immunity. Plaintiffs object, arguing that resolution of Defendants' Eleventh Amendment defenses is premature and that Defendants have not supported their argument with binding precedent. The Court finds that Defendants have in fact supported their argument with multiple case citations to the Supreme Court and published Eleventh Circuit cases, and agrees that claims against Defendants in their official capacities are properly dismissed.[16]

---

[16] Plaintiffs contend that Defendants cited only one unpublished Eleventh Circuit opinion in support of dismissal of all official capacity claims. (Doc. 15 at 9). It is unclear how Plaintiffs missed Defendants' three-page argument citing binding precedent. Plaintiffs', citing a case from the District of Maryland contend that "the courts have carved out broad exceptions to such immunity, based on a factual inquiry into the

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The Eleventh Amendment protects a State from being sued in federal court without the State's consent. As a result, parties with claims against a non-consenting State must resort to the State's own courts." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The Eleventh Amendment also bars suit brought in federal court when an "arm of the State" is sued. *Id.* Whether a defendant is an "arm of the State" is not determined by labels or titles. Rather, the Court looks to the particular function in which the defendant was engaged when taking the alleged actions giving rise to liability. *Id.*

To determine whether an entity is an "arm of the State," courts consider the following four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. In *Manders*, the Eleventh Circuit examined Georgia law and determined that a Clinch County sheriff was entitled to Eleventh Amendment immunity as an "arm of the State" when he established and executed a use-of-force policy at the jail. *Id.* at 1328. The entity seeking to invoke Eleventh Amendment immunity "bears the burden of demonstrating that it qualifie[s] as an arm of the state entitled to share in its immunity." *Haven v. Bd. of Trs. of Three Rivers Reg'l Libr. Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)). Defendants state that in their § 1983 claims, Plaintiffs essentially allege that Sheriff Youghn allowed deputies to use deadly force against Mr. Mercer, failed to properly train his deputies on the use of force on mentally ill suspects, failed to intervene and prevent the use of force against Mr. Mercer, and failed to enforce his policies.

> Since *Manders* was decided in 2003, the relevant Georgia law remains
> essentially unchanged. Indeed, it is now "insurmountable" that Georgia sheriffs
> act as arms of the state—not as county officials . . . . The Court, therefore, will
> not repeat the *Manders* analysis here. In sum, Manders and its progeny dictate
> that where a sheriff and his deputies are performing their official and authorized
> duties as state actors—*i.e.*[,] engaged in general law enforcement functions or
> making arrests pursuant to state law—they are entitled to Eleventh Amendment

---

circumstances of the case." (Doc. 15 at 9). Significantly, case law from Maryland is irrelevant to determining whether a Georgia sheriff and his deputies are "arms of the State of *Georgia*."

immunity from a § 1983 claim for money damages or other retrospective relief
brought against them in their official capacities.

*Frederick v. Brown*, No. CV 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015) (internal
citations omitted) (citing *Manders*, 338 F.3d at 132, and gathering cases holding the same within
the Eleventh Circuit); *see also Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007) ("As
employees of the sheriff, deputies . . . , in their official capacities, are also entitled to Eleventh
Amendment immunity."); *Carter v. Butts Cnty.*, No. 5:12–CV–209, 2015 WL 3477022, at *19
(M.D. Ga. June 2, 2015) (holding the sheriff acted as an arm of the state in maintaining an
alleged policy, practice, or custom of failing to discipline his deputies), *rev'd. in part on other
grounds*, 821 F.3d 1310 (11th Cir. 2016); *Townsend v. Coffee Cnty.*, 854 F. Supp. 2d 1345, 1352
(S.D. Ga. 2011) (finding a deputy sheriff acted as an arm of the state while making an
investigatory stop and arrest); *Stanton v. McIntosh Cnty.*, No. CV 209-092, 2010 WL 11526845,
at *4 (S.D. Ga. Sept. 29, 2010) (finding that a sheriff was acting as an arm of the state when
"applying for and obtaining arrest warrants"), *aff'd*, 434 F. App'x 871 (11th Cir. 2011).

Here, it is clear that Defendants were acting in their official capacity as a Georgia sheriff
and deputies during the events that form the basis of Plaintiffs' § 1983 claim. Thus, the
Eleventh Amendment bars Plaintiffs' claim for monetary damages against Defendants in their
official capacity. Plaintiffs here alleged no facts that would avoid this conclusion. Based on the
Court's finding, Plaintiffs failed to state a claim upon which relief can be granted with respect
to their § 1983 Claim against Defendants in their official capacity, for violation of Mr. Mercer's
constitutional rights.

Accordingly, the Motion to Dismiss Plaintiffs' § 1983 Claims against Defendants in
their official capacities is **GRANTED**. As a result, the claims against Defendants in their
official capacities in Counts One, Two, Three and Four are **DISMISSED WITHOUT
PREJUDICE**.

### D. State Law Claims

#### 1. Assault and Battery Claim

In Count Six, Plaintiffs assert a claim for assault and battery against Deputy Whitley in
his individual and official capacities. They allege that Deputy Whitley's act of discharging his
firearm into Mr. Mercer's head was an unauthorized and illegal act that constitutes the
intentional tort of assault and battery pursuant to Georgia law. They further allege that Deputy

Whitley acted with malicious intent causing Mr. Mercer's death and immense pre-death pain and suffering. Plaintiffs did not cite the specific Georgia statute under which they bring their assault and battery claim. However, under Georgia law,

> An assault occurs when all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another. The act of intentionally causing actual physical harm to another is civilly actionable as a battery. It is the intent to make either harmful or insulting or provoking contact with another which renders one civilly liable for a battery.

*Everett v. Goodloe*, 602 S.E.2d 284, 291 (2004) (alterations adopted) (citations, footnotes and internal quotation marks omitted); *see also* O.C.G.A. § 51-1-13 ("A physical injury done to another shall give a right of action to the injured party, whatever may be the intention of the person causing the injury, unless he is justified under some rule of law. However, intention shall be considered in the assessment of damages.").

Defendants contend that because Deputy Whitley had probable cause to believe Mr. Mercer posed a significant threat of death or serious injury to Deputy Whitley acted in self-defense and defense of others. Defendants' assert that under Georgia law, the use of deadly force is justified where one "reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony." (Doc. 6 at 19 (citing O.C.G.A. § 16-3-21(a)).

However, Defendants' assertions are greatly affected by the findings of fact regarding Plaintiffs' claims in Count Two already discussed above, and those findings make dismissal of Plaintiffs' assault and battery claim against Deputy Whitley inappropriate at this stage of the proceedings based on Defendants' assertion of justification under O.C.G.A. § 16-3-21(a).

Defendants also contend that Plaintiffs failed to plead facts supporting their claims for assault and battery. The Court agrees with Defendants with respect to the assault claim, but disagrees with respect to the claim for battery. As to their claim for assault, Plaintiffs did not plead that Mr. Mercer was aware of the potential threat caused by Deputy Whitley, and in fact, pled that he came out of the wood line, inferring that Deputy Whitley's presence was unknown. Thus, Mr. Mercer could not have reasonably apprehended a violent injury would be incurred from Deputy Whitley. Having failed to plead facts as to an essential element, Plaintiffs failed to state a claim upon which relief can be granted with respect to their assault claim against Deputy Whitley.

However, Plaintiffs alleged Deputy Whitley intentionally discharged his pistol striking Mr. Mercer in the head and resulting in his death. This is certainly sufficient to meet the essential elements of a battery. Thus, the Court next determines whether Deputy Whitley is entitled to official immunity as to his personal liability for this claim.

2.  Official Immunity

"Georgia law protects an officer from personal liability arising from his performance of 'official functions' as long as the officer did not act with 'actual malice' or 'actual intent to cause injury.' *Gates*, 884 F.3d at 1304 (citing Ga. Const. art. I, § 2, para. IX(d)).

> The Georgia Supreme Court has defined actual malice in this context to mean a deliberate intention to do wrong. As such, actual malice is not established merely by showing that the defendant acted with ill will. Nor does actual malice encompass merely the reckless disregard for the rights and safety of others. Likewise, the phrase actual intent to cause injury—as used in Georgia's official immunity provision—means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.

*Gates*, 884 F.3d at 1304 (11th Cir. 2018) (citing *Adams v. Hazelwood*, 520 S.E.2d 896 (Ga. 1999) (internal quotations marks omitted)). Official immunity applies to an officer's discretionary actions taken within the scope of his official authority. *Id.* For purposes of official immunity, "a discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Marshall v. Browning*, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011). In considering whether an officer acted with malice so as to preclude official immunity, the Georgia Court of Appeals has stated that "[a] fact finder may infer from evidence that a defendant acted with actual malice." *Lagroon v. Lawson*, 759 S.E.2d 878, 883 (Ga. Ct. App. 2014); *see also Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (citing *Lagroon*, 759 S.E.2d at 883 and stating "a jury can infer actual malice based on an officer's conduct").

The Court has already determined, that the Defendants were acting within their discretionary authority with respect to the September 23, 2022 incident. Thus, the question is whether Plaintiffs pled sufficient facts showing that Deputy Whitley acted with actual malice *or* the actual intent to injure Mr. Mercer. Plaintiffs alleged Deputy Whitley acted with malice and that he intentionally injured Mr. Mercer. These allegations are sufficient at this stage to preclude dismissal of their battery claim based on Deputy Whitley asserted defense of official

immunity. The very definition of "battery" is the "act of intentionally causing actual physical harm to another," and such act specifically excludes Deputy Whitley from being entitled to official immunity at this stage of the proceedings.

Based on the foregoing, the Court finds that Plaintiffs pled sufficient facts to adequately support their allegations that Deputy Whitley, in his individual capacity, committed a battery against Mr. Mercer when he discharged his pistol thereby striking Mr. Mercer in the head and causing his death. Further, absent evidence that Deputy Whitley had probable cause to believe that Mr. Mercer posed a significant threat of death or serious injury to Deputy Whitley or to others, such act was not justified and was done with the actual intent to injure Mr. Mercer. Deputy Whitley is not entitled to official immunity on Defendants' Motion.

3. <u>Sovereign Immunity</u>

The Court next considers whether Plaintiffs' claim of battery against Deputy Whitley in his official capacity is barred by sovereign immunity. "A state is immune from a suit for damages in federal court by one of its own citizens and this sovereign immunity extends to an official when he acts as an 'arm of the State.'" *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016). The Court has already determined, Sheriff Youghn and his deputies, including Deputy Whitley, were acting as an arm of the State. The same reasoning and analysis used to determine whether the Defendants, in their official capacities, are entitled to Eleventh Amendment immunity, applies equally here in finding that Deputy Whitley is entitled to sovereign immunity with respect to Plaintiffs' claim of battery asserted against Deputy Whitley in his official capacity.

Deputy Whitley was acting in his official capacity as a Georgia Deputy during the events that form the basis of Plaintiffs' battery claim. Thus, sovereign immunity prohibits Plaintiffs' claim for monetary damages against Deputy Whitley in his official capacity. Plaintiffs here alleged no facts that would avoid this conclusion. Based on the Court's finding, Plaintiffs failed to state a claim upon which relief can be granted with respect to their battery claim against Deputy Whitley in his official capacity.

Accordingly, the Motion to Dismiss Plaintiffs' claims against Deputy Whitley for assault and battery as alleged in Count Six is **GRANTED IN PART** and **DENIED IN PART**.

33

4. Punitive Damages Claim

In Count Seven, Plaintiffs seek punitive damages against the individual Defendants. Although they do not indicate the statutory basis for seeking punitive damages in Count Seven, in their Prayer for Relief, Plaintiffs cite O.C.G.A. § 51-12-5.1 as the basis for their request, which provides:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

O.C.G.A. § 51-12-5.1. Following the words of the statute, Plaintiffs' allege the conduct of the individual Defendants "constitutes willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the entire presumption of conscious indifference to consequences." They further allege that punitive damages should be assessed in order to penalize, punish, or deter the individual Defendants. (Doc. 1 ¶ 52). As Defendants contend, Plaintiffs' Complaint contains only boilerplate language seeking punitive damages. Plaintiffs do not state the facts on which they base their claim for punitive damages. Nor do they even state the specific bases or conduct applicable to their claim; *i.e.*, "willful misconduct, malice, fraud, wantonness, oppression." They merely state all the bases without stating the facts which give rise to such claim.

Because Plaintiffs' Complaint, as to punitive damages, contains only a threadbare recital of the elements for such a claim, the Court finds that Plaintiffs failed to state a claim for punitive damages.

Accordingly, the Motion to Dismiss is **GRANTED** with respect to Plaintiffs' claim for punitive damage in Count Seven against the Defendants in their individual capacities.

## VI. FICTITIOUS-PARTY PLEADING

The Court notes that Count One is the only substantive Count against the John Doe Defendants in their individual or official capacities. Granting Defendants' Motion to Dismiss Count One therefore moots Defendants' assertion that the Complaint should be dismissed as to the John Doe Defendants on the basis that fictitious-party pleading is not permitted in federal court. Thus, the Court need not consider this argument.

## VII.  CONCLUSIONS AS TO MOTION TO DISMISS

Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) and Brief in Support Thereof (Doc. 6) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    The Motion to Dismiss is **GRANTED** with respect to:

a.    Plaintiffs' claim in Count One against all the Individual Defendants in their individual and official capacities, and such claim is **DISMISSED WITH PREJUDICE**;

b.    Plaintiffs' claim in Count Two against Deputy Whitley, in his official capacity only, and such claim is **DISMISSED WITH PREJUDICE**;

c.    Plaintiffs' claim in Count Three against Sheriff Youghn, in his individual and official capacities, and such claim is **DISMISSED WITH PREJUDICE**;

d.    Plaintiffs' claim in Count Four against Sheriff Youghn, in his individual and official capacities, and against Irwin County Sheriff's Office, and such claim is **DISMISSED WITH PREJUDICE**;

e.    Plaintiffs' claim in Count Six for assault against Deputy Whitley in his individual and official capacities is **DISMISSED WITHOUT PREJUDICE**;

f.    Plaintiffs' claim in Count Six for battery against Deputy Whitley in his official capacity only is **DISMISSED WITHOUT PREJUDICE**

f.    Plaintiffs' claim in Count Seven against all Individual Defendants in their individual capacities, and such claim is **DISMISSED WITHOUT PREJUDICE**.

2.    The Motion to Dismiss is **DENIED** with respect to:

a.    Plaintiffs' claim in Count Two against Deputy Whitley, in his individual capacity; and

b.    Plaintiffs' claim in Count Six for battery against Deputy Whitley in his individual capacity.

**SO ORDERED**, this 30th day of September 2025.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**